NO TITLE SEARCH
NO TITLE INSURANCE

**After recording return to:**
Beiramee Law Group, P.C.
7508 Wisconsin Avenue, Second Floor
Bethesda, MD 20814

# COMMERCIAL DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**GRANTOR EXPRESSLY CERTIFIES TO LENDER THAT THE PROCEEDS OF THE NOTE WILL BE USED FOR BUSINESS/COMMERCIAL PURPOSES ONLY. THE UNDERSIGNED HEREBY CERTIFIES THAT THE PROCEEDS OF THE NOTE WILL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

**THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT** (the "**Instrument**") is dated as of the 12th day of FEBRUARY, 2020, by **Justin THORNTON** and **Jennifer CASTILLO**, and their successors and/or assigns, whose business address is 1207 I ST NE, WASHINGTON DC 20002, as Grantor (individually, collectively, and by the entireties, “"**Grantor**"), to **Martin S. GOLDBERG**, Esq., whose address is 7508 Wisconsin Avenue, Second Floor, Bethesda, Maryland 20814, as Trustee ("**Trustee**"), for the benefit of **CTJ INVESTMENT GROUP L.L.C.**, a D.C. limited liability company, its successors and/or assigns, whose address is 6510 Old Branch Avenue Temple Hills, MD 20748 or at such other address as Lender may designate from time-to-time, , as Beneficiary ("**Lender**").

Grantor, in consideration of the Indebtedness, and the trust created by this Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the Mortgaged Property including the land located at:

1207 I ST NE, WASHINGTON, DC 20002

and described more fully in Exhibit A attached to this Instrument, and authorizes Trustee to sell the Mortgaged Property upon default by any lawful means, as provided in this Instrument, and assents to the passage of a decree for the sale of the Mortgaged Property; provided, however, that prior to the occurrence of an Event of Default, Grantor shall be entitled to possession of the Mortgaged Property.

TO SECURE TO LENDER the repayment of the Indebtedness evidenced by the Commercial Deed of Trust Note (the "**Note**") payable to Lender, dated as of the date of this Instrument, in the principal amount of Six Hundred Thousand Dollars **($600,000.00)**, executed by Grantors, Thornton Development LLC, a Maryland limited liability company, and 1719 Corcoran Limited Liability Company a/k/a 1719 Corcoran, LLC, a D.C. limited liability company (also sometimes referred to herein as the "**Borrower**" or "**Maker**"), and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents.



Initial JT / JC

Grantor represents and warrants that Grantor is lawfully seized of the Mortgaged Property and has the right, power and authority to grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered except by other Deeds of Trust in favor of the same Lender. Grantor covenants that Grantor will warrant and defend specially the title to the Mortgaged Property against all claims and demands, subject to any easements, restrictions and agreements of record, if any, and/or listed in a schedule of exceptions to coverage in any title insurance policy issued to Lender contemporaneously with the execution and recordation of this Instrument and insuring Lender's interest in the Mortgaged Property.

COVENANTS. Grantor and Lender covenant and agree as follows:

1. DEFINITIONS. The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:

(a) "Borrower" means all persons or entities identified as "Borrower" in the first page of this Instrument, together with their successors and assigns. If Borrower and Grantor are the same person, sentences in this instrument which refer to Borrower and to Grantor shall be read as referring to that one person.

(b) "Environmental Permit" means any permit, license, or other authorization issued under any Hazardous Materials Law with respect to any activities or businesses conducted on or in relation to the Mortgaged Property.

(c) "Event of Default" means the occurrence of any event listed in Section 18.

(d) "Fixtures" means all property which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(e) "Governmental Authority" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property.

(f) "Grantor" means all persons or entities identified as "Grantor" in the first paragraph of this Instrument, together with their successors and assigns.

(g) "Guaranty" means the Guaranty or Guaranties, if any, executed on even date herewith in connection with the making of the Note, and all schedules, riders, allonges and addenda, as such Guaranty may be amended from time to time.

(h) "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials;



Initial ____ / ____

radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

(i) "Hazardous Materials Laws" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials and apply to Grantor or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.,* the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, *et seq.,* the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.,* the Clean Water Act, 33 U.S.C. Section 1251, *et seq.,* and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, *et seq.,* and their state analogs.

(j) "Improvements" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

(k) "Indebtedness" means the principal of, interest on, and all other amounts due at any time under, the Note, the Guaranty, this Instrument or any other Loan Document, including late charges, default interest, and advances as provided in Section 8 or elsewhere including this Instrument to protect the security of this Instrument.

(I) "Key Principal" means the natural person(s) or entity identified as such or Exhibit B attached to this Instrument, and any person or entity who becomes a Key Principal after the date of this Instrument and is identified as such in an amendment or supplement to this Instrument.

(m) "Land" means the land described in Exhibit A.

(n) "Leases" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property (including proprietary leases or occupancy agreements if Grantor is a cooperative housing corporation), and all modifications, extensions or renewals.

(o) "Lender" means the entity identified as "Lender" in the first paragraph of this Instrument and its successors and assigns, or any subsequent holder of the Note.

(p) "Loan Documents" means the Note, the Guaranty, this Instrument, all guaranties, all indemnity agreements, O&M Programs, and any other documents now or in the future executed by Borrower, Grantor, Key Principal, any guarantor or any other person in connection with the loan evidenced by the Note, as such documents may be amended from time to time.

(q) **"Loan Servicer"** means the entity that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, the Guaranty, this Instrument and any other Loan Document, and otherwise to service the loan evidenced by the Note for the benefit of Lender. Unless Grantor receives notice to the contrary, the Loan Servicer is the entity identified as "Lender" in the first paragraph of this Instrument.

(r) **"Mortgaged Property"** means all of Grantor's present and future right, title and interest in and to all of the following:



Initial ______ / JC

(1) the Land;
(2) the Improvements;
(3) the Fixtures;
(4) the Personalty;
(5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefitting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;
(6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Grantor obtained the insurance pursuant to Lender's requirement;
(7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;
(8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Grantor now or in the future, including cash or securities deposited to secure performance by parties of their obligations;
(9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds;
(10) all Rents and Leases;
(11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the loan secured by this Instrument and, if Grantor is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;
(12) all tenant security deposits which have not been forfeited by any tenant under any Lease; and
(13) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

(s) "Note" means the Note described on page 1 of this Instrument.

(t) "O&M Program" is defined in Section 14(a).

(u) "Personalty" means all equipment, inventory, general intangibles which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software) and other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land



Initial ____ / JC

or in the Improvements, and any operating agreements relating to the Land or the Improvements, and any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land.

(v) "Property Jurisdiction" is defined in Section 26(a).

(w) "Rents" means all rents, revenues and other income of the Land or the Improvements, whether now due, past due, or to become due, and deposits forfeited by tenants.

(x) "Taxes" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

(y) "Transfer" means (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity. "Transfer" does not include (i) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument or (ii) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the United States Bankruptcy Code. For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venture.

2. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT. This instrument is also a security agreement under the Uniform Commercial Code for any of the Mortgaged Property which, under applicable law, may be subject to a security interest under the Uniform Commercial Code, whether acquired now or in the future, and all products and cash and non-cash proceeds thereof (collectively, "UCC Collateral"), and Grantor hereby grants to Lender a security interest in the UCC Collateral. Grantor hereby authorizes Lender to file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest and Grantor agrees, if Lender so requests, to execute and deliver to Lender such financing statements, continuation statements and amendments. Grantor shall pay all filing costs and all costs and expenses of any record searches for financing statements that Lender may require. Without the prior written consent of Lender, Grantor shall not create or permit to exist any other lien or security interest in any of the UCC Collateral. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property which is or may become a Fixture.



Initial ______ / JC

3. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.

(a) As part of the consideration for the Indebtedness, Grantor absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Grantor to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Grantor. Promptly upon request by Lender, Grantor agrees to execute and deliver such further assignments as Lender may from time to time require. Grantor and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property," as that term is defined in Section l(r). However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under applicable law, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of the Grantor that in this circumstance this Instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b) After the occurrence of an Event of Default, Grantor authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender, and Grantor shall, upon Grantor's receipt of any Rents from any sources, pay the total amount of such receipts to the Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Grantor a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Loan Documents and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Grantor free and clear of, and released from, Lender's rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Grantor's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Grantor shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Grantor hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Grantor any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Grantor shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c) Grantor represents and warrants to Lender that Grantor has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the loan evidenced by the Note), that Grantor has not



Initial ____ / ____

performed, and Grantor covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than two months prior to the due dates of such Rents. Grantor shall not collect or accept payment of any Rents more than two months prior to the due dates of such Rents.

(d) If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Grantor and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to this Section 3, protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Grantor's solvency and without the necessity of giving prior notice (oral or written) to Borrower or Grantor, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Grantor, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property. Immediately upon appointment of a receiver or immediately upon the Lender's entering upon and taking possession and control of the Mortgaged Property, Grantor shall surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and shall deliver to Lender or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents. In the event Lender takes possession and control of the Mortgaged Property, Lender may exclude Borrower and Grantor and their representatives from the Mortgaged Property. Grantor acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(e) If Lender enters the Mortgaged Property, Lender shall be liable to account only to Grantor and only for those Rents actually received. Lender shall not be liable to Borrower, Grantor, anyone claiming under or through Grantor or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under this Section 3, and Grantor hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.



Initial ______ / JC

(f) If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an additional part of the Indebtedness as provided in Section 8.

(g) Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

(h) Grantor shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect. All Leases for residential dwelling units shall be on forms approved by Lender, shall be for initial terms of at least six months and not more than two years, and shall not include options to purchase. If customary in the applicable market, residential Leases with terms of less than six months may be permitted with Lender's prior written consent.

(i) Grantor shall not receive or accept Rent under any Lease (whether residential or nonresidential) for more than two months in advance.

4. PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS. Upon default by Borrower under the Note, Grantor shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents.

5. APPLICATION OF PAYMENTS. If at any time Lender receives, from Borrower, Grantor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Grantor's obligations under this Instrument and the Note shall remain unchanged.

6. COMPLIANCE WITH LAWS. Grantor shall comply with all laws, ordinances, regulations and requirements of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, zoning and land use, and Leases. Grantor also shall comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits. Grantor shall at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 6. Grantor shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property. Grantor represents and warrants to Lender that no portion of the Mortgaged Property has been or will be purchased with the proceeds of any illegal activity.



Initial ______ / JC______

7. USE OF PROPERTY. Unless required by applicable law, Grantor shall not (a) except for any change in use approved by Lender, allow changes in the use for which all or any part of the Mortgaged Property is being used at the time this Instrument was executed, (b) initiate or acquiesce in a change in the zoning classification of the Mortgaged Property, or (c) establish any condominium or cooperative regime with respect to the Mortgaged Property.

8. PROTECTION OF LENDER'S SECURITY.

(a) If Grantor fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Grantor and to protect Lender's interest, including (I) payment of fees and out-of-pocket expenses of attorneys, accountants, inspectors and consultants, (2) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (3) procurement of the insurance required by Section 15, and (4) payment of amounts which Grantor has failed to pay under Sections 11 and 13.

(b) Any amounts disbursed by Lender under this Section 8, or under any other provision of this Instrument that treats such disbursement as being made under this Section 8, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "Default Rate", as defined in the Note.

(c) Nothing in this Section 8 shall require Lender to incur any expense or take any action.

9. INSPECTION. Lender, its agents, representatives, and designees may make or cause to be made entries upon and inspections of the Mortgaged Property (including environmental inspections and tests) during normal business hours, or at any other reasonable time.

10. BOOKS AND RECORDS; FINANCIAL REPORTING.

(a) Grantor shall keep and maintain at all times at the Mortgaged Property or the management agent's offices, and upon Lender's request shall make available at the Mortgaged Property, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property, and copies of all written contracts, Leases, and other instruments which affect the Mortgaged Property. The books, records, contracts, Leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.

(b) If requested by Lender, Grantor shall furnish to Lender all of the following:



Initial ______ / ______

(1) within 120 days after the end of each fiscal year of Grantor, a statement of income and expenses for Grantor's operation of the Mortgaged Property for that fiscal year, a statement of changes in financial position of Grantor relating to the Mortgaged Property for that fiscal year and, when requested by Lender, a balance sheet showing all assets and liabilities of Grantor relating to the Mortgaged Property as of the end of that fiscal year;
(2) within 120 days after the end of each fiscal year of Grantor, and at any other time upon Lender's request, a rent schedule for the Mortgaged Property showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;
(3) within 120 days after the end of each fiscal year of Grantor, and at any other time upon Lender's request, an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;
(4) within 120 days after the end of each fiscal year of Grantor, and at any other time upon Lender's request, a statement that identifies all owners of any interest in Grantor and the interest held by each, if Grantor is a corporation, all officers and directors of Grantor, and if Grantor is a limited liability company, all managers who are not members;
(5) upon Lender's request, a monthly property management report for the Mortgaged Property, showing the number of inquiries made and rental applications received from tenants or prospective tenants and deposits received from tenants and any other information requested by Lender; and
(6) upon Lender's request, a balance sheet, a statement of income and expenses for Grantor and a statement of changes in financial position of Grantor for Grantor's most recent fiscal year; and
(7) if required by Lender, a statement of income and expense for the Mortgaged Property for the prior month or quarter.

(c) Each of the statements, schedules and reports required by Section 10(b) shall be certified to be complete and accurate by an individual having authority to bind Grantor, and shall be in such form and contain such detail as Lender may reasonably require. Lender also may require that any statements, schedules or reports be audited at Grantor's expense by independent certified public accountants acceptable to Lender.

(d) If Grantor fails to provide in a timely manner the statements, schedules and reports required by Section 10(b), Lender shall have the right to have Grantor's books and records audited, at Grantor's expense, by independent certified public accountants selected by Lender in order to obtain such statements, schedules and reports, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Indebtedness as provided in Section 8.



Initial [signature] / JC

(e) If an Event of Default has occurred and is continuing, Grantor shall deliver to Lender upon written demand all books and records relating to the Mortgaged Property or its operation.

(f) Grantor authorizes Lender to obtain a credit report on Grantor at any time.

(g) If an Event of Default has occurred and Lender has not previously required Grantor to furnish a quarterly statement of income and expense for the Mortgaged Property, Lender may require Grantor to furnish such a statement within 45 days after the end of each fiscal quarter of Grantor following such Event of Default.

11. TAXES; OPERATING EXPENSES.

(a) Subject to the provisions of Section 11(c), Grantor shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment.

(b) Subject to the provisions of Section 1 l(c), Grantor shall pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including insurance premiums, utilities, repairs and replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added.

(c) Grantor, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of any Imposition other than insurance premiums, if (1) Grantor notifies Lender of the commencement or expected commencement of such proceedings, (2) the Mortgaged Property is not in danger of being sold or forfeited, (3) Grantor deposits with Lender reserves sufficient to pay the contested Imposition, if requested by Lender, and (4) Grantor furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of the reserves established by Grantor to pay the contested Imposition.

12. LIENS; ENCUMBRANCES. Grantor acknowledges that, to the extent provided in Section 17, the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a "Lien") on the Mortgaged Property (other than the lien of this Instrument) or on certain ownership interests in Grantor, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a "Transfer" which constitutes an Event of Default.

13. PRESERVATION, MANAGEMENT AND MAINTENANCE OF MORTGAGED PROPERTY. Grantor (1) shall not commit waste or permit impairment or deterioration of the Mortgaged Property, (2) shall not abandon the Mortgaged Property, (3) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, (4) shall keep the Mortgaged Property in good repair, including the replacement of Personalty and Fixtures with items of equal or better function and quality, and (5) shall give notice to Lender of and, unless otherwise directed in writing by Lender, shall appear in and defend any action or proceeding purporting to affect the Mortgaged Property, Lender's security



Initial ____ / JC

or Lender's rights under this Instrument. Grantor shall not (and shall not permit any tenant or other person to) remove, demolish or alter the Mortgaged Property or any part of the Mortgaged Property except in connection with the replacement of tangible Personalty.

14. ENVIRONMENTAL HAZARDS.

(a) Except for matters covered by a written program of operations and maintenance approved in writing by Lender (an "O&M Program") or matters described in Section 14(b), Grantor shall not cause or permit any of the following:

(1) the presence, use, generation, release, treatment, processing, storage (including storage in above ground and underground storage tanks), handling, or disposal of any Hazardous Materials on or under the Mortgaged Property or any other property of Grantor that is adjacent to the Mortgaged Property;

(2) the transportation of any Hazardous Materials to, from, or across the Mortgaged Property;

(3) any occurrence or condition on the Mortgaged Property or any other property of Grantor that is adjacent to the Mortgaged Property, which occurrence or condition is or may be in violation of Hazardous Materials Laws; or

(4) any violation of or noncompliance with the terms of any Environmental Permit with respect to the Mortgaged Property or any property of Grantor that is adjacent to the Mortgaged Property.

The matters described in clauses (1) through (4) above are referred to collectively in this Section 14 as **"Prohibited Activities or Conditions".**

(b) Prohibited Activities and Conditions shall not include the safe and lawful use and storage of quantities of (1) pre-packaged supplies, cleaning materials and petroleum products customarily used in the operation and maintenance of comparable commercial properties, and (2) petroleum products used in the operation and maintenance of motor vehicles from time to time located on the Mortgaged Property's parking areas, so long as all of the foregoing are used, stored, handled, transported and disposed of in compliance with Hazardous Materials Laws.

(c) Grantor shall take all commercially reasonable actions (including the inclusion of appropriate provisions in any Leases executed after the date of this Instrument) to prevent its employees, agents, and contractors, and all tenants and other occupants from causing or permitting any Prohibited Activities or Conditions.

(d) Grantor represents and warrants to Lender that, except as previously disclosed by Grantor to Lender in writing:

(1) Grantor has not at any time engaged in, caused or permitted any Prohibited Activities or Conditions;



Initial ______ / JC ______

(2) to the best of Grantor's knowledge after reasonable and diligent inquiry, no Prohibited Activities or Conditions exist or have existed;

(3) except to the extent previously disclosed by Grantor to Lender in writing, the Mortgaged Property does not now contain any underground storage tanks, and, to the best of Grantor's knowledge after reasonable and diligent inquiry, the Mortgaged Property has not contained any underground storage tanks in the past. If there is an underground storage tank located on the Property which has been previously disclosed by Grantor to Lender in writing, that tank complies with all requirements of Hazardous Materials Laws;

(4) Grantor has complied with all Hazardous Materials Laws, including all requirements for notification regarding releases of Hazardous Materials. Without limiting the generality of the foregoing, Grantor has obtained all Environmental Permits required for the operation of the Mortgaged Property in accordance with Hazardous Materials Laws now in effect and all such Environmental Permits are in full force and effect;

(5) no event has occurred with respect to the Mortgaged Property that constitutes, or with the passing of time or the giving of notice would constitute, noncompliance with the terms of any Environmental Permit;

(6) there are no actions, suits, claims or proceedings pending or, to the best of Grantor's knowledge after reasonable and diligent inquiry, threatened that involve the Mortgaged Property and allege, arise out of, or relate to any Prohibited Activity or Condition; and

(7) Grantor has not received any complaint, order, notice of violation or other communication from any Governmental Authority with regard to air emissions, water discharges, noise emissions or Hazardous Materials, or any other environmental, health or safety matters affecting the Mortgaged Property or any other property of Grantor that is adjacent to the Mortgaged Property.

The representations and warranties in this Section 14 shall be continuing representations and warranties that shall be deemed to be made by Grantor throughout the term of the loan evidenced by the Note, until the Indebtedness has been paid in full.

(e) Grantor shall promptly notify Lender in writing upon the occurrence of any of the following events:

(1) Grantor's discovery of any Prohibited Activity or Condition;

(2) Grantor's receipt of or knowledge of any complaint, order, notice of violation or other communication from any Governmental Authority or other person with regard to present or future alleged Prohibited Activities or Conditions or any



Initial ______ / JC

other environmental, health or safety matters affecting the Mortgaged Property or any other property of Grantor that is adjacent to the Mortgaged Property; and

(3) any representation or warranty in this Section 14 becomes untrue after the date of this Agreement.

Any such notice given by Grantor shall not relieve Grantor of, or result in a waiver of, any obligation under this Instrument, the Note, or any other Loan Document.

(f) Grantor shall pay promptly the costs of any environmental inspections, tests or audits (**"Environmental Inspections**") required by Lender in connection with any foreclosure or deed in lieu of foreclosure, or as a condition of Lender's consent to any Transfer under Section 21, or required by Lender following a reasonable determination by Lender that Prohibited Activities or Conditions may exist. Any such costs incurred by Lender (including the fees and out-of-pocket costs of attorneys and technical consultants whether incurred in connection with any judicial or administrative process or otherwise) which Grantor fails to pay promptly shall become an additional part of the Indebtedness as provided in Section 8. The results of all Environmental Inspections made by Lender shall at all times remain the property of Lender and Lender shall have no obligation to disclose or otherwise make available to Grantor or any other party such results or any other information obtained by Lender in connection with its Environmental Inspections. Lender hereby reserves the right, and Grantor hereby expressly authorizes Lender, to make available to any party, including any prospective bidder at a foreclosure sale of the Mortgaged Property, the results of any Environmental Inspections made by Lender with respect to the Mortgaged Property. Grantor consents to Lender notifying any party (either as part of a notice of sale or otherwise) of the results of any of Lender's Environmental Inspections. Grantor acknowledges that Lender cannot control or otherwise assure the truthfulness or accuracy of the results of any of its Environmental Inspections and that the release of such results to prospective bidders at a foreclosure sale of the Mortgaged Property may have a material and adverse effect upon the amount which a party may bid at such sale. Grantor agrees that Lender shall have no liability whatsoever as a result of delivering the results of any of its Environmental Inspections to any third party, and Grantor hereby releases and forever discharges Lender from any and all claims, damages, or causes of action, arising out of, connected with or incidental to the results of, the delivery of any of Lender's Environmental Inspections.

(g) If any investigation, site monitoring, containment, clean-up, restoration or other remedial work (**"Remedial Work"**) is necessary to comply with any Hazardous Materials Law or order of any Governmental Authority that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property under any Hazardous Materials Law, Grantor shall, by the earlier of (1) the applicable deadline required by Hazardous Materials Law or (2) 30 days after notice from Lender demanding such action, begin performing the Remedial Work, and thereafter diligently prosecute it to completion, and shall in any event complete the work by the time required by applicable Hazardous Materials Law. If Grantor fails to begin on a timely basis or diligently prosecute any required Remedial Work, Lender may, at its option, cause the Remedial Work to be completed, in which case Grantor shall reimburse Lender on demand for the cost of doing so. Any reimbursement due from Grantor to Lender shall become part of the Indebtedness as provided in Section 8.



Initial ______ / JC ______

(h) Grantor shall cooperate with any inquiry by any Governmental Authority and shall comply with any governmental or judicial order which arises from any alleged Prohibited Activity or Condition.

(i) Grantor shall indemnify, hold harmless and defend (i) Lender, (ii) any prior owner or holder of the Note, (iii) the Loan Servicer, (iv) any prior Loan Servicer, (v) the officers, directors, shareholders, partners, employees and trustees of any of the foregoing, and (vi) the heirs, legal representatives, successors and assigns of each of the foregoing (collectively, the **"Indemnitees")** from and against all proceedings, claims, damages, judgments, penalties and costs (whether initiated or sought by Governmental Authorities or private parties), including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, investigatory fees, and remediation costs, whether incurred in connection with any judicial or administrative process or otherwise, arising directly or indirectly from any of the following:

(1) any breach of any representation or warranty of Grantor in this Section 14;

(2) any failure by Grantor to perform any of its obligations under this Section 14;

(3) the existence or alleged existence of any Prohibited Activity or Condition;

(4) the presence or alleged presence of Hazardous Materials on or under the Mortgaged Property or any property of Grantor that is adjacent to the Mortgaged Property; and

(5) the actual or alleged violation of any Hazardous Materials Law.

(j) Counsel selected by Grantor to defend Indemnitees shall be subject to the approval of those Indemnitees. However, any Indemnitee may elect to defend any claim or legal or administrative proceeding at the Grantor's expense.

(k) Grantor shall not, without the prior written consent of those Indemnitees who are named as parties to a claim or legal or administrative proceeding (a **"Claim"),** settle or compromise the Claim if the settlement (1) results in the entry of any judgment that does not include as an unconditional term the delivery by the claimant or plaintiff to Lender of a written release of those Indemnitees, satisfactory in form and substance to Lender; or (2) may materially and adversely affect Lender, as determined by Lender in its discretion.

(l) The provisions of this Section 14 shall be in addition to any and all other obligations and liabilities that Grantor may have under applicable law or under other Loan Documents. If Grantor consists of more than one person or entity, the obligation of those persons or entities to indemnify the Indemnitees under this Section 14 shall be joint and several. The obligation of Grantor to indemnify the Indemnitees under this Section 14 shall survive any repayment or discharge of the Indebtedness, any foreclosure proceeding, any foreclosure sale, any delivery of any deed in lieu of foreclosure, and any release of record of the lien of this Instrument.



Initial ______ / ______

15. PROPERTY AND LIABILITY INSURANCE.

(a) Grantor shall keep the Improvements insured at all times against such hazards as Lender may from time to time require, which insurance shall include but not be limited to coverage against loss by fire and allied perils, general boiler and machinery coverage, and business income coverage. Lender's insurance requirements may change from time to time throughout the term of the Indebtedness. If any of the Improvements is located in an area identified by the Federal Emergency Management Agency (or any successor to that agency) as an area having special flood hazards, and if flood insurance is available in that area, Grantor shall insure such Improvements against loss by flood.

(b) All policies of property damage insurance shall include a non-contributing, non-reporting mortgage and loss payee clause in favor of, and in a form approved by, Lender. Lender shall have the right to hold the original policies or duplicate original policies of all insurance required by Section 15(a). Grantor shall promptly deliver to Lender a copy of all renewal and other notices received by Grantor with respect to the policies and all receipts for paid premiums. At least 30 days prior to the expiration date of a policy, Grantor shall deliver to Lender the original (or a duplicate original) of a renewal policy in form satisfactory to Lender.

(c) Grantor shall maintain at all times commercial general liability insurance, workers' compensation insurance and such other liability, errors and omissions and fidelity insurance coverages as Lender may from time to time require.

(d) Grantor shall comply with all insurance requirements and shall not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage that this Instrument requires Grantor to maintain.

(e) In the event of loss, Grantor shall give immediate written notice to the insurance carrier and to Lender. Grantor hereby authorizes and appoints Lender as attorney-in-fact for Grantor to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 19 shall require Lender to incur any expense or take any action. Lender may, at Lender's option, (1) hold the balance of such proceeds to be used to reimburse Grantor for the cost of restoring and repairing the Mortgaged Property to the equivalent of its original condition or to a condition approved by Lender (the **"Restoration"),** or (2) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due. To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar commercial properties.

(f) Lender shall not exercise its option to apply insurance proceeds to the payment of the Indebtedness if all of the following conditions are met: (1) no Event of Default (or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default) has occurred and is continuing; (2) Lender determines, in its discretion, that there will be sufficient funds to complete the Restoration; (3) Lender determines, in its discretion, that the rental income



Initial ______ / ______

from the Mortgaged Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, Imposition Deposits, deposits to reserves and loan repayment obligations relating to the Mortgaged Property; (4) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date of the Note or (B) one year after the date of the loss or casualty; and (5) upon Lender's request, Grantor provides Lender evidence of the availability during and after the Restoration of the insurance required to be maintained by Grantor pursuant to this Section 15.

(g) If the Mortgaged Property is sold at a foreclosure sale or Lender acquires title to the Mortgaged Property, Lender shall automatically succeed to all rights of Grantor in and to any insurance policies and unearned insurance premiums and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

16. CONDEMNATION.

(a) Grantor shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a "Condemnation"). Grantor shall appear in and prosecute or defend any action or proceeding relating to any Condemnation unless otherwise directed by Lender in writing. Grantor authorizes and appoints Lender as attorney-in-fact for Grantor to commence, appear in and prosecute, in Lender's or Grantor's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with any Condemnation. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 16 shall require Lender to incur any expense or take any action. Grantor hereby transfers and assigns to Lender all right, title and interest of Grantor in and to any award or payment with respect to (i) any Condemnation, or any conveyance in lieu of Condemnation, and (ii) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation.

(b) Lender may apply such awards or proceeds, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to the restoration or repair of the Mortgaged Property or to the payment of the Indebtedness, with the balance, if any, to Grantor. Unless Lender otherwise agrees in writing, any application of any awards or proceeds to the Indebtedness shall not extend or postpone the due date of any monthly installments referred to in the Note or Guaranty, Section 4 of this Instrument, or change the amount of such installments. Grantor agrees to execute such further evidence of assignment of any awards or proceeds as Lender may require.

17. TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN GRANTOR.

(a) The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

(1) a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property;



Initial ______ / ______

(2) a Transfer of a Controlling Interest in Grantor;

(3) a Transfer of a Controlling Interest in any entity which owns, directly or indirectly through one or more intermediate entities, a Controlling Interest in Grantor;

(4) a Transfer of all or any part of a Key Principal's ownership interests in Grantor, or in any other entity which owns, directly or indirectly through one or more intermediate entities, other than a transfer of an interest that is (i) insignificant, (ii) non-governing interest and (iii) does not effectively shift control of the Grantor

(5) if Key Principal is an entity, (A) a Transfer of a Controlling Interest in Key Principal, or (B) a Transfer of a Controlling Interest in any entity which owns, directly or indirectly through one or more intermediate entities, a Controlling Interest in Key Principal;

(6) if Grantor or Key Principal is a trust, the termination or revocation of such trust; and

(7) a conversion of Grantor from one type of legal entity into another type of legal entity, whether or not there is a Transfer.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 17.

(b) The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of Section 17(a) to the contrary:

(1) a Transfer to which Lender has consented;

(2) a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person;

(3) the grant of a leasehold interest in all or any portion of the Improvements not containing an option to purchase for a term of three years or less (including renewals) if the Improvements are residential, and for a term of ten years (five years if to an affiliate of Grantor) or less (including renewals) if the Improvements are not residential;

(4) a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender;



Initial ______ / ______

(5) the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Grantor pays to Lender, upon demand, all costs and expenses incurred by Lender in connection with reviewing Borrower's or Grantor's request; and

(6) the creation of a tax lien or a mechanic's, materialman's or judgment lien against the Mortgaged Property which is bonded off, released of record or otherwise remedied to Lender's satisfaction within 30 days of the date of creation.

(c) For purposes of this Section, the following terms shall have the meanings set forth below:

(1) **"Initial Owners"** means, with respect to Grantor or any other entity, the persons or entities who on the date of the Note own in the aggregate 100% of the ownership interests in Grantor or that entity.

(2) A Transfer of a **"Controlling Interest"** shall mean, with respect to any entity, the following:

(i) if such entity is a general partnership or a joint venture, a Transfer of any general partnership interest or joint venture interest which would cause the Initial Owners to own less than 51% of all general partnership or joint venture interests in such entity;
(ii) if such entity is a limited partnership, a Transfer of any general partnership interest;
(iii) if such entity is a limited liability company or a limited liability partnership, a Transfer of any membership or other ownership interest which would cause the Initial Owners to own less than 51% of all membership or other ownership interests in such entity;
(iv) if such entity is a corporation (other than a Publicly-Held Corporation) with only one class of voting stock, a Transfer of any voting stock which would cause the Initial Owners to own less than 51% of voting stock in such corporation;
(v) if such entity is a corporation (other than a Publicly-Held Corporation) with more than one class of voting stock, a Transfer of any voting stock which would cause the Initial Owners to own less than a sufficient number of shares of voting stock having the power to elect the majority of directors of such corporation;
(vi) if such entity is a trust, the removal, appointment or substitution of a trustee of such trust other than (A) in the case of a land trust, or (B) if the trustee of such trust after such removal, appointment or substitution is a trustee identified in the trust agreement approved by Lender;



Initial ____ / JC

19. REMEDIES CUMULATIVE. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

20. FORBEARANCE.

(a) Lender may (but shall not be obligated to) agree with Grantor, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any guarantor or other third party obligor, to take any of the following actions: extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Instrument, the Guaranty, the Note, or any other Loan Document; release anyone liable for the payment of any amounts under this Instrument, the Guaranty, the Note, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under the Note; and otherwise modify this Instrument, the Guaranty, the Note, or any other Loan Document.

(b) Any forbearance by Lender in exercising any right or remedy under the Guaranty, the Note, this Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any other right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender. Lender's receipt of any awards or proceeds under Sections 19 and 20 shall not operate to cure or waive any Event of Default.

21. LOAN CHARGES. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower or Grantor is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates that law, and Borrower or Grantor is entitled to the benefit of that law, that charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the principal of the Indebtedness. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower or Grantor has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.



Initial ______ / JC ______

22. WAIVER OF STATUTE OF LIMITATIONS. Grantor hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any Loan Document.

23. WAIVER OF MARSHALLING. Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Grantor and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

24. FURTHER ASSURANCES. Grantor shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Note.

25. ESTOPPEL CERTIFICATE. Within 10 days after a request from Lender, Grantor shall deliver to Lender a written statement, signed and acknowledged by Grantor, certifying to Lender or any person designated by Lender, as of the date of such statement, (i) that the Loan Documents are unmodified and in full force and effect (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications); (ii) the unpaid principal balance of the Note and the Guaranty; (iii) the date to which interest under the Note and Guaranty has been paid; (iv) that neither Grantor nor Borrower is in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Instrument, the Note, or any of the other Loan Documents (or, if the Grantor is in default, describing such default in reasonable detail); (v) whether or not there are then existing any setoffs or defenses known to Grantor against the enforcement of any right or remedy of Lender under the Loan Documents; and (vi) any additional facts requested by Lender.

26. GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.

(a) To the extent required by District of Columbia law, this Instrument shall be governed by the laws of the jurisdiction in which the Land is located (the "Property Jurisdiction"), but shall otherwise be governed, by the laws of the District of Columbia.

(b) Except to the extent required to exercise foreclosure and related rights with respect to the Land and other collateral located outside of the District of Columbia, Grantor agrees that any controversy arising under or in relation to this Instrument, or any other Loan Document shall be litigated exclusively in the District of Columbia or Maryland. The state and federal courts and authorities with jurisdiction in the District of Columbia or



Initial AA / JC

Maryland shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Guaranty, this Instrument, any security for the Indebtedness, or any other Loan Document. Grantor irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

27. NOTICE.

(a) All notices, demands and other communications ("notice") under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in this Instrument, and shall be deemed given on the earliest to occur of (1) the date when the notice is received by the addressee; (2) the first Business Day after the notice is delivered to a recognized overnight courier service, with arrangements made for payment of charges for next Business Day delivery; or (3) the third Business Day after the notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested. As used in this Section 31, the term "Business Day" means any day other than a Saturday, a Sunday or any other day on which financial institutions in the District of Columbia are authorized to be closed.

(b) Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 27. Each party agrees that it will not refuse or reject delivery of any notice given in accordance with this Section 27, that it will acknowledge, in writing, the receipt of any notice upon request by the other party and that any notice rejected or refused by it shall be deemed for purposes of this Section 27 to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

(c) Notwithstanding the foregoing, any written, emailed or faxed notice which is actually received by the intended party shall be deemed delivered on the date received.

28. SALE OF NOTE; CHANGE IN SERVICER. The Note or a partial interest in the Note (together with the Guaranty, this Instrument and the other Loan Documents) may be sold one or more times without prior notice to Borrower or Grantor. A sale may result in a change of the Loan Servicer. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given notice of the change.

29. SUCCESSORS AND ASSIGNS BOUND. This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Grantor. However, a Transfer not permitted by Section 17 shall be an Event of Default.

30. JOINT AND SEVERAL LIABILITY. If more than one person or entity signs this Instrument as Grantor, the obligations of such persons and entities shall be joint and several.

31. RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.



Initial [signature] / JC

(a) The relationship between Lender and Grantor shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Grantor.

(b) No creditor of any party to this Instrument and no other person (except Borrower) shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (1) any arrangement (a "Servicing Arrangement") between the Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Grantor for the payment of the Indebtedness under the Guaranty, (2) Grantor shall not be a third party beneficiary of any Servicing Arrangement, and (3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness under the Note or guaranteed by the Guaranty.

32. SEVERABILITY; AMENDMENTS. The invalidity or unenforceability of any provision of this Instrument shall not affect the validity or enforceability of any other provision, and all other provisions shall remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

33. CONSTRUCTION. The captions and headings of the sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument. Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this Instrument. All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument. Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Agreement includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to."

34. LOAN SERVICING. All actions regarding the servicing of the loan evidenced by the Note, including the collection of payments, the giving and receipt of notice, inspections of the Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives notice to the contrary. If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such notice from Lender shall govern.

35. DISCLOSURE OF INFORMATION. Lender may furnish information regarding Grantor or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the Indebtedness, including trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of commercial mortgage loans. Grantor irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including any right of privacy.



Initial ______ / ______

36. SUBROGATION. If, and to the extent that, the proceeds of the loan evidenced by the Note are used to pay, satisfy or discharge any obligation of Grantor for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a "Prior Lien"), such loan proceeds shall be deemed to have been advanced by Lender at Grantor's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

37. ACCELERATION; REMEDIES. At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale and any other remedies permitted by District of Columbia state law or provided in this Instrument or in any other Loan Document. Grantor acknowledges that the power of sale granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including but not limited to attorneys' fees, costs of documentary evidence, abstracts and title reports.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail written notice of sale to Grantor in the manner prescribed by District of Columbia law. Trustee shall give notice of sale and shall sell the Mortgaged Property according to District of Columbia law. Trustee may sell the Mortgaged Property at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any part of the Mortgaged Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Mortgaged Property at any sale.

Trustee shall deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Mortgaged Property so sold without any express or implied covenant or warranty. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements made in those recitals. Trustee shall apply the proceeds of the sale in the following order: (a) to all costs and expenses of the sale, including Trustee's commission of 5%, attorneys' fees and costs of title evidence; (b) to the Indebtedness in such order as Lender, in Lender's discretion, directs; and (c) the excess, if any, to the person or persons legally entitled to the excess.

Grantor hereby assents to the passage of a decree for the sale of the Mortgaged Property pursuant to Lender's exercise of its rights under this Section.

38. RELEASE. Upon payment of the Indebtedness, Lender or Trustee shall release this Instrument. Grantor shall pay Lender's or Trustee's reasonable costs incurred in releasing this Instrument.

39. SUBSTITUTE TRUSTEE. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the city or county in which this Instrument is recorded. Without conveyance of the Mortgaged Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee in this Instrument and by applicable law.



Initial [signature] / JC

**40. <u>WAIVER OF TRIAL BY JURY.</u> GRANTOR AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

41. FUTURE ADVANCES. Without limiting the foregoing, and without requirement of any notice to any party or any filing in the public records, Lender reserves the right (in its sole and absolute discretion) to make advances to Borrower in excess of the face amount of the Note in order to fund completion of any improvements or rehabilitation being performed on any real property securing the Note (whether or not the improvements or rehabilitation relates to the Mortgaged Property and irrespective of when the property in question was pledged), provided only that the advances in excess of the face amount of the Note do not, when added to accrued but unpaid interest, total more than Fifty (50) percent of the face amount of the Note. All such advances shall be considered part of the Indebtedness.

42. ACTION OF TRUSTEES. All title, estate, rights, powers, trusts and duties hereunder given, appertaining to or devolving upon Trustees shall be in each of the persons from time to time constituting the Trustees, so that any action hereunder, or purporting to be hereunder by either one of the original or any successor Trustees shall for all purposes be considered to be, and shall be effective as, the action of both Trustees.

**[Signatures appear on the following page]**



Initial [signature] / JC

IN WITNESS WHEREOF, Grantor(s) has signed and delivered this Instrument under seal or has caused this Instrument to be signed and delivered by its duly authorized representative under seal.

**GRANTOR:**

_______________________________ (SEAL)
Justin Thornton

District of Columbia

Before me, the undersigned, a Notary Public in and for the aforesaid jurisdiction, on the 10th day of February, 2020, personally appeared Justin Thornton, to me known personally or satisfactorily proved, and who, being by me duly sworn, deposes and says that said instrument was signed by him, individually and on behalf of 1719 Corcoran Limited Liability Company, and THORNTON DEVELOPMENT LLC, and he has acknowledged said instrument to be his/its free act and deed.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

_______________________________
Notary Public

SHAUN MARBLE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 14, 2023

My Commission Expires:

SHAUN MARBLE NOTARY PUBLIC DISTRICT OF COLUMBIA Exp. 3/14/23

**GRANTOR:**

_______________________________ (SEAL)
Jennifer Castillo

District of Columbia

Before me, the undersigned, a Notary Public in and for the aforesaid jurisdiction, on the 10th day of February, 2020, personally appeared Jennifer Castillo, to me known personally, and who, being by me duly sworn, deposes and says that said instrument was signed by her, and she has acknowledged said instrument to be her free act and deed.

IN WITNESS WHEREOF I hereunto set my hand and official seal.

_______________________________
Notary Public

SHAUN MARBLE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 14, 2023

My Commission Expires:

SHAUN MARBLE NOTARY PUBLIC Exp. 3/14/23 DISTRICT OF COLUMBIA



Initial ____ / ____

EXHIBIT A
LEGAL DESCRIPTION OF THE LAND

Lot number One Hundred Forty-Nine (149) in the Washington Brick Machine Company's subdivision of lots in Square numbered One Thousand Three (1003), as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 16 at folio 16.

Said property being now known for assessment and taxation purposes as Lot 149 in Square 1003.

BEING The same property conveyed by Deed recorded December 4, 2011 as Instrument No. 15226; and by Quitclaim Deed dated March 22, 2018 as Instrument No. 2018032633.



Initial ______ / JC

EXHIBIT B
KEY PRINCIPALS

Justin Thornton

Jennifer Castillo



Initial ______ / ______

## SECURITY AFFIDAVIT — CLASS 1

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

| 1003 | | 149 |
|---|---|---|
| **Square** | **Suffix** | **Lot** |

I, (We) [ ] the owner(s) of the real property described within certify, subject to criminal penalties for making false statements pursuant to section 22-2405 of the District of Columbia Official Code, that the real property described within is Class 1 Property, as that class of property is established pursuant to section 47-813, with 5 or fewer units:

*Signature*

*Signature*

Subscribed to and sworn to before me this 1st day of April, 2020.

*Notary Public*

My Commission Expires: [ ]
mmddyyyy

SHAUN MARBLE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 14, 2023

SHAUN MARBLE NOTARY PUBLIC DISTRICT OF COLUMBIA